E-FILED
Monday, 09 June, 2025 01:41:18 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | | |
|---|---|---|
| TRAVIS P. BURKE, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 24-2291** |
| | ) | |
| DUSTIN D. HEUERMAN *et al.*, | ) | |
| Defendants. | ) | |

**ORDER**

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court for screening is a Complaint (Doc. 1) filed under 42 U.S.C. § 1983 by Plaintiff Travis Burke, an inmate at Jacksonville Correctional Center. Plaintiff also filed a Motion for Counsel (Doc. 5), which he seeks to supplement (Docs. 9, 11); a Motion to Reconsider (Doc. 7), which he seeks to amend (Doc. 8); and a Motion for Status (Doc. 10).

I.      **Complaint**

        **A. Screening Standard**

The Court must "screen" Plaintiff's Complaint and dismiss any legally insufficient claim or the entire action if warranted. 28 U.S.C. § 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id.* In reviewing a complaint, the court accepts the factual allegations as accurate, liberally construing them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be

provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

**B. Facts Alleged**

The events Plaintiff describes occurred at Champaign County Correctional Center ("Jail") and are alleged against the following Defendants: Sheriff Dustin D. Heuerman; Corrections Lieutenants Josh Sapp and R. Snyder; Corrections Officers Bordon, McMahon, and Johnson; Nurse Practitioners Aline Nelson and Sara Stover, Nurses Renea Saltsgaver and Olga Vishniakov; American Community Health ("Hospital"); and Champaign County Physical Plant.

In May 2023, Plaintiff suffered a ruptured heart valve and twelve broken bones. Plaintiff was on life support for twelve days. (Pl. Compl., Doc. 1 at 3:12.) Plaintiff was arrested on November 8, 2023, but was hospitalized for a blood clot in his lungs. Plaintiff entered the Jail on November 10, 2023. Four days later, Plaintiff submitted a grievance regarding multiple doctor appointments, requesting a second "medical" mattress, and to be administered his prescribed medication. (*Id.* at 15.) Plaintiff acknowledged that he received a second mattress on November 23, 2023.

On December 6, 2023, Plaintiff sought clarification from Defendant Saltsgaver regarding a "misprint" on his second mattress permit. (*Id.* at 4:17.) Saltsgaver told Plaintiff that the permit for the second mattress was for the bottom bunk. When Plaintiff attempted to explain why the second mattress was on the top bunk, Saltsgaver walked away. When Defendant Borden arrived to confiscate the mattress, Plaintiff refused to relinquish custody. As a result, Plaintiff was placed in segregation for five days.

On January 25, 2024, Plaintiff asked Defendant Nelson for a permit to possess a second mattress. After Defendant Salsgaver informed Nelson that "this was the guy I told you about," Nelson told Plaintiff she would consider his request. (*Id*. at 4:20.) Plaintiff never received a permit for a second mattress. Plaintiff wrote several grievances regarding the mattress permit that were denied.

On December 21, 2023, Plaintiff was transported to the Hospital to see a pain management specialist, who documented his concern that Plaintiff's "pain is being very under[-]treated at this time." (*Id*. at 5:24.) The pain specialist prescribed a thousand milligrams ("mg") of Gabapentin and acetaminophen to be taken three times daily and sixty mg of Duloxetine[1] daily. (*Id*. at 25.) Plaintiff asserts that he did not receive his prescribed Duloxetine on February 27, April 20, and 22, 2024, which caused him increased pain and suffering. (*Id*. at 27.)

On December 22, 2023, Plaintiff was transported to the Hospital for a physical therapy ("PT") appointment, which was to occur every two weeks. Plaintiff was not transported to his next PT session until January 30, 2024. Plaintiff had a third and final PT session on February 15, 2024. Plaintiff submitted a grievance that Defendant Snyder addressed, noting, "It was stated by your [physical therapist] that you no longer needed PT." (*Id*. at 6:38.) After Plaintiff was transferred to the Illinois Department of Corrections on May 24, 2024, he learned that his physical therapist did not discontinue his PT sessions.

---

[1] "Duloxetine is … used to treat fibromyalgia (muscle pain and stiffness) and chronic (long-lasting) pain that is related to muscles and bones." Mayo Clinic, Duloxetine (oral route), https://www.mayoclinic.org/drugs-supplements/duloxetine-oral-route/description/drg-20067247 (last visited May 30, 2025).

On February 27, 2024, Plaintiff slipped on water leaking underneath his sink. The grievance response stated that Defendant Champaign County Physical Plant was aware of the water leak but disputed that mold was present.

On March 1, 2024, Plaintiff asked Defendant Bordon to examine the mold, but Plaintiff did not elaborate further. When Plaintiff complained about the added pain and discomfort from his slip and fall, Defendant Vishniakov stated that there was nothing she could do since Plaintiff was prescribed the "max dose of pain med[ications]." (*Id*. at 9:66.)

On March 23, 2024, Plaintiff asked Defendant Johnson for his inhaler, which was delayed for ninety minutes. Plaintiff filed a grievance that Defendant Sapp processed. On March 26, 2024, Plaintiff saw Defendant Nelson for pain complaints, but while speaking with her, Defendant McMahon told Plaintiff it was time to leave without explanation.

On April 1, 2024, Plaintiff was informed about his daughter "being abused [and] neglected." (*Id*. at 6:44.) That same day, Plaintiff was in his cell when he banged on his door and told a passing Defendant Johnson that he "feels like" committing suicide "until he knows his daughter is safe." (*Id*. at 7:45.) Johnson disregarded Plaintiff, stating, "[G]ood for you." (*Id*. at 7:46.) Plaintiff then attempted to harm himself by cutting his neck. Plaintiff was transported to healthcare, received medical treatment for his cuts, and was placed in a suicide prevention cell without a mattress.

On April 9, 2024, Plaintiff asked Defendants Nelson and Stover to see a hearing specialist because he experienced ringing in his ears and a lack of hearing. Plaintiff was never referred to an Ear, Nose, and Throat ("ENT") specialist.

On April 26, 2024, Plaintiff asked Defendants Bordon and Johnson for his inhaler, which they informed Plaintiff they could not find. On April 29, 2024, Plaintiff requested his inhaler, but Defendant Vishniakov told Plaintiff that his prescription required renewal and did not permit Plaintiff to possess his inhaler.

**C. Analysis**

Under Federal Rule of Civil Procedure ("Rule") 8(a), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "This requirement is satisfied if the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level." *Bravo v. Midland Credit Mgmt.*, 812 F.3d 599, 601–02 (7th Cir. 2016) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005) (explaining that plaintiffs "need do no more than narrate a grievance simply and directly, so that the defendant knows what he has been accused of"). In addition to describing the claim, a plaintiff must indicate the time and place. *Thomson v. Washington*, 362 F.3d 969, 971 (7th Cir. 2004).

Plaintiff does not state a claim against Defendant Heuerman. Plaintiff names Heuerman based on his supervisory responsibilities, which is inadequate to impose §1983 liability. *See Gossmeyer v. McDonald*, 128 F.3d 481, 495 (7th Cir. 1997) ("The doctrine of respondeat superior cannot be used to impose § 1983 liability on a supervisor for the conduct of a subordinate violating a plaintiff's constitutional rights."); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (noting that because vicarious liability is inapplicable to §

1983 suits, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Plaintiff also does not state a claim against Defendants Sapp and Snyder for responding to Plaintiff's grievances. *See Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017) ("Prison officials who simply processed or reviewed inmate grievances lack personal involvement in the conduct forming the basis of the grievance.").

Similarly, Plaintiff states no claim against Defendants American Community Health or the Champaign County Physical Plant. *See Smith v. Knox Cty. Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012) (concluding that a building, such as a jail or correctional facility, cannot be sued under § 1983).

Pretrial detainees have a right to be free from physical harm inflicted by others in the institution. *See Kemp v. Fulton Cnty.*, 27 F.4th 491, 494–95 (7th Cir. 2022). This right derives from the Fourteenth Amendment's Due Process Clause, which prohibits any punishment before "an adjudication of guilt in accordance with due process of law." *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979).

The Fourteenth Amendment standard does not require a pretrial detainee to prove the defendant's subjective awareness of the risk of harm to establish liability. *See Kemp*, 27 F.4th at 497 (explaining that such a requirement "cannot be reconciled" with the Supreme Court's instruction in *Kingsley v. Hendrickson*, 576 U.S. 389, 135 S.Ct. 2466, 192 L.Ed.2d 416 (2015) to "pay careful attention to the different status of pretrial detainees" (internal quotations omitted)). The detainee must prove only that a reasonable officer would have appreciated the risk of harm to the detainee and, from there, that the

defendant acted objectively unreasonably in addressing that risk. *See Echols v. Johnson*, 105 F.4th 973, 974-75 (7th Cir. June 27, 2024); *Kemp*, 27 F.4th at 497; *Thomas v. Dart*, 39 F.4th 835, 841 (7th Cir. 2022).

In *Miranda v. County of Lake*, 900 F.3d 335 (7th Cir. 2018), the Seventh Circuit held that "the controlling inquiry for assessing a due process challenge to a pretrial detainee's medical care proceeds in two steps." *McCann v. Ogle County*, 909 F.3d 881, 886 (7th Cir. 2018). "The first step, which focuses on the intentionality of the individual defendant's conduct, remains unchanged and 'asks whether the medical defendants acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences of their handling of [plaintiff's] case.'" *Id.* (quoting *Miranda*, 900 F.3d at 353); *see also Pittman by and through Hamilton v. Madison Cnty., Illinois*, 108 F.4th 561, 570 (7th Cir. 2024) ("This framing asks strictly whether the defendant intended to commit the physical act that caused the alleged injury.").

"At the second step, . . . [courts] ask whether the challenged conduct was objectively reasonable." *Id.* "This standard requires courts to focus on the totality of facts and circumstances faced by the individual alleged to have provided inadequate medical care and to gauge objectively—without regard to any subjective belief held by the individual—whether the response was reasonable." *Id.*

Plaintiff claims that Defendants Nelson and Saltsgaver denied him a medical mattress. However, Plaintiff's account shows that Saltsgaver refused to listen to Plaintiff's explanation on December 6, 2024, and recommended that Nelson deny Plaintiff's renewed request for a medical mattress. Plaintiff does not claim that Saltsgaver denied

his mattress request. Similarly, Plaintiff does not state a claim against Nelson because he does not allege that Nelson refused his request for a medical mattress.

The Court notes that Plaintiff later asserts Defendants Nelson and Saltsgaver failed to provide medical treatment, failed to administer prescribed medication, and lied about his physical therapy needs. However, Plaintiff does not offer any facts to support these conclusory claims. *See Bravo v. Midland Credit Mgmt.*, 812 F.3d 599, 601–02 (7th Cir. 2016) (holding that a plausible claim requires a plaintiff to (1) describe[] the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level." *Bravo v. Midland Credit Mgmt.*, 812 F.3d 599, 601–02 (7th Cir. 2016).

Plaintiff also does not state a claim against Defendants Bordon and Johnson. Plaintiff recounted that Bordon and Johnson could not find his inhaler despite their efforts to locate the medication. Plaintiff's assertion that his inhaler was located three days later does not establish that the actions of Bordon and Johnson to find the medication were objectively unreasonable. Plaintiff also does not state a claim against Defendant Vishniakov for refusing to provide Plaintiff with access to an inhaler that she claimed required renewal. Plaintiff neither challenged Vishniakov's medical determination nor asserted that she had the authority to renew Plaintiff's prescription as a nurse. *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) ("Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job."). Additionally, Plaintiff states no claim against Vishniakov for noting that Plaintiff was prescribed the maximum pain medication. *See McCann v. Ogle County*, 909 F.3d 881, 887 (7th Cir. 2018) (concluding that

a nurse may rely on a doctor's order when administering medication or otherwise treating a detainee, since it is "not the responsibility [of a nurse] to second-guess [a doctor's] medical judgment, especially when nothing about [the doctor's] prescriptions or course of care more generally raised any obvious risks of harm for [the plaintiff]").

Plaintiff names Defendant Stover, claiming that he asked her to be referred to an ENT, which was not accomplished. However, Plaintiff is "not entitled to dictate the terms of his care." *Harper v. Santos*, 847 F.3d 923, 927 (7th Cir. 2017). Plaintiff does not provide any factual basis from which this Court can infer that Stover's response to Plaintiff's medical request was objectively unreasonable. Thus, he does not state a plausible claim against Stover.

Plaintiff's assertion that Defendant McMahon cut short Plaintiff's medical appointment without additional context is insufficient to determine if a reasonable officer would have appreciated the risk involved in making such a determination. *See Pittman*, 108 F.4th at 570 ("[T]he proper inquiry turns on whether a reasonable officer in the defendant's shoes would have recognized that the plaintiff was seriously ill or injured and thus needed medical care."). Therefore, Plaintiff does not state a claim against McMahon.

However, Plaintiff does state a Fourteenth Amendment claim against Defendant Johnson for ignoring Plaintiff's assertion that he would harm himself. "While there are different arms of state government, the walls between them are not [so] high [as to prevent an official from passing along information]. To the contrary, each must keep the other informed about material facts, including suicide risks." *Cavalieri v. Shepard*, 321 F.3d

616, 623 (7th Cir. 2003).

## II.   Remaining Motions

### A.  Reconsideration

Plaintiff's Motion to Reconsider (Doc. 7) and Amended Motion to Reconsider (Doc. 8) are granted. The Clerk of the Court is directed to vacate the Order entered on December 20, 2024, denying Plaintiff Petition to Proceed *in forma pauperis* ("IFP") (Doc. 3) and calculate the reduced filing fee under 28 U.S.C. § 1915(b)(1).

### B.  Counsel and Status

Plaintiff has no constitutional right to counsel, and the Court cannot require an attorney to accept *pro bono* appointments in civil cases. The most the Court can do is ask for volunteer counsel. *See Jackson v. County of McLean*, 953 F.2d 1070, 1071 (7th Cir. 1992) (holding that although indigent civil litigants have no constitutional right to counsel, a district court may, in its discretion, request counsel to represent indigent civil litigants in certain circumstances). In considering Plaintiff's motion for counsel, the Court must ask two questions: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007).

Plaintiff appends one letter (Doc. 11 at 2) from a law firm declining to represent him. The Court finds Plaintiff has not demonstrated he reasonably attempted to obtain counsel, which typically requires writing to several lawyers and attaching the responses received. Additionally, the Court concludes that recruiting counsel at this early stage of

the proceedings is not warranted. As explained below, entry of the Court's Merit Review Order begins the service phase. After Defendants have been served and filed their Answers to Plaintiff's Complaint, which usually takes sixty days, the Court will enter a scheduling order to provide guidance and deadlines to assist Plaintiff during the discovery process. Therefore, Plaintiff's Motion for Counsel (Doc. 5) is denied.

Plaintiff's Motion for Status (Doc. 10) is moot with the entry of the Court's Order.

**IT IS THEREFORE ORDERED:**

1) **Plaintiff's Motion for Counsel (Doc. 5) and Amended Motion for Counsel (Doc. 9) are DENIED.**

2) **Plaintiff's Motion to Reconsider (Doc. 7) and Amended Motion to Reconsider (Doc. 8) are GRANTED. The Clerk of the Court is DIRECTED to vacate the Order entered on December 20, 2024, denying Plaintiff Petition to Proceed IFP (Doc. 3) and calculate the reduced filing fee under 28 U.S.C. § 1915(b)(1).**

3) **Plaintiff's Motion for Status (Doc. 10) is MOOT with the entry of the Court's Order.**

4) **According to the Court's screening of Plaintiff's Complaint [1] under 28 U.S.C. § 1915A, Plaintiff has alleged enough facts to proceed with a Fourteenth Amendment against Defendant Johnson. Plaintiff's claim against Defendant proceeds in an individual capacity only. Any additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or under Federal Rule of Civil Procedure 15.**

5) **The Clerk of the Court is DIRECTED to terminate Defendants Bordon, Dustin D. Heuerman, McMahon, Aline Nelson, Renea Saltsgaver, Josh Sapp, R. Snyder, Sara Stover, Olga Vishniakov, American Community Health, and the Champaign County Physical Plant as Defendants.**

6) **This case is now in the process of service. The Court advises Plaintiff to wait until counsel has appeared for Defendant before filing any motions to give Defendant notice and an opportunity to respond to those motions. Motions filed before Defendant's counsel has filed an appearance will be denied as premature. Plaintiff need not submit any evidence to the Court at this time unless otherwise directed by the Court.**

7) The Court will attempt service on Defendant by mailing a waiver of service. Defendant has sixty days from service to file an Answer. If Defendant has not filed Answers or appeared through counsel within ninety days of the entry of this order, Plaintiff may file a motion requesting the status of service. After Defendant has been served, the court will enter an order to set discovery and dispositive motion deadlines.

8) If Defendant no longer works at the address provided by Plaintiff, the entity for whom Defendant worked while at that address shall submit to the Clerk said Defendant's current work address or, if not known, said Defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

9) Defendant shall file an Answer within sixty days of the date the Clerk sends the waiver. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendant's positions. The Court does not rule on the merits of those positions unless and until Defendant files a motion. Therefore, no response to the answer is necessary or will be considered.

10) This District uses electronic filing, which means that after Defendant's counsel has filed an appearance, Defendant's counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail copies of motions and other documents that Plaintiff has filed with the Clerk to Defendant's counsel. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Plaintiff must mail his discovery requests and responses directly to Defendant's counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendant's counsel has filed an appearance and the Court has entered a scheduling order, which will explain the discovery process in more detail.

11) The Court grants Defendant's counsel leave to depose Plaintiff at his place of confinement. Defendant's counsel shall arrange the time for the deposition.

12) Plaintiff shall immediately notify the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to inform the Court of a change in mailing address or phone number will result in the dismissal of this lawsuit with prejudice.

13) If Defendant fails to sign and return a waiver of service to the Clerk within thirty

**days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals service on that Defendant and will require that Defendant to pay the total costs of formal service under Federal Rule of Civil Procedure 4(d)(2).**

14) **The Court directs the Clerk to enter the standard qualified protective order under the Health Insurance Portability and Accountability Act.**

15) **The Court directs the Clerk to attempt service on Defendant under the standard procedures.**

ENTERED June 9, 2025.


s/ *Colleen R. Lawless*

_____
COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE